IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| AMBER SHAHID and | ) | |
| MOHAMMED HASSAN, | ) | |
|     *Plaintiffs*, | ) | |
| | ) | |
|   v. | ) | Case No. 18-cv-50011 |
| | ) | |
| CROSSROADS REAL ESTATE PARTNERS, | ) | Hon. Frederick J. Kapala |
| LLC, successor by merger to SVN | ) | Magistrate Iain D. Johnston |
| CROSSROADS MANAGEMENT, LLC | ) | |
|     *Defendants*. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

The Plaintiffs, AMBER SHAHID and MOHAMMED HASSAN, by their attorney, Dickson Law Group, LLC, hereby submit their memorandum in response and opposition to the Motion to Dismiss filed by Defendant on February 13, 2018, Dkt. 10-12.

**INTRODUCTION**

Defendants have filed a motion to dismiss. *See* Dkt. 10. The motion to dismiss is nominally brought pursuant to Federal Rule of Civil Procedure 12(b)(6). *See id*. The motion to dismiss is supported by a memorandum. *See* Dkt. 11.

The motion to dismiss, however, is a motion for summary judgment. *See* F.R.C.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Rather than attacking whether Plaintiffs have alleged facts, that if true, would entitle Plaintiffs to relief, Defendant asserts numerous affirmative matters, including whether the debt

1

Defendant tried to collect was in default, and whether a fiduciary relationship existed between Defendant and its property owner. *See* Dkt. 10 and 11.

Defendant tries to avoid the effect of Rule 12(d) by including a footnote at page 3 of the memorandum, requesting that the Court do Defendant's job for it and conform its motion for summary judgment into a motion to dismiss. This leaves Plaintiffs at an inequitable disadvantage. Defendant has filed a what is in effect a motion for summary judgment, and Plaintiffs now must respond to it as if it were a motion for summary judgment to avoid waiver. Defendants apologize to the Court in advance for making the Court wade through issues more appropriately taken up on summary judgment.

**BACKGROUND**

Plaintiffs filed a lawsuit in the court for McHenry County, Illinois captioned *Shahid, et al. v. Crossroads Real Estate Partners, LLC*, case no. 17 AR 147 (the "FDCPA Lawsuit"). The FDCPA Lawsuit was removed to this Court by Defendants and is what is now pending before the Court.

The FDCPA Lawsuit is based on Defendant's conduct in and relating to a small claims collections case it filed against Plaintiffs in the state court situated in McHenry County, Illinois in the case captioned *SVN Crossroads Management, LLC v. Shahid, et al*, case no. 16 SC 1030. The complaint filed in this case refers to the small claims collections case as the "Prior Lawsuit" because it was the only prior collections lawsuit filed against Plaintiffs at the time of filing the FDCPA Lawsuit. On August 30, 2017, the correct party, 1110 Green, LLC, filed a second collections lawsuit in McHenry County, Illinois in the case captioned *1110 Green, LLC v. Shahid, et al*, case no. 17 SC 2117. Because we may have to discuss the both small claims collection lawsuits

in the future, Defendant will refer to the 16 SC 1030 case as the "First Small Claims Case" and 17 SC 2117 as the "Second Small Claims Case."

The allegations of the First Small Claims Case and the Second Small Claims Case are identical, except for substituting the correct party-plaintiff and removing allegations about Defendant's ability to sue on behalf of the property owner. *Compare* Ex. "1" with Ex. "2." Both small claims cases prayed for the same amount in damages ($5,091.44 plus attorney fees and costs) based upon the same allegations of default in payment of rent and damage to the rental unit. *See id*.

The First Small Claims Case was dismissed with prejudice with respect to SVN Crossroads Management, LLC, because the McHenry County court found that Defendant lacked standing to sue in its own name on behalf of the property owner. *See* Ex. "3," the dismissal order for the First Small Claims Case. The Second Small Claims Case went to a bench trial on January 26, 2018. The court presiding over the Second Small Claims Case rendered its judgment on February 2, 2018, finding that the property owner's claims for rent and late fees were affirmatively rebutted by evidence at trial, but granted the property owner a judgment for damages to the rental unit at about 28% of what the property owner prayed for and reduced the property owner's claim for attorney fees. *See* Ex. "4," the judgment entered in the Second Small Claims Case.

The arguments raised in Defendant's memorandum are each addressed in turn. Plaintiffs make a similar request for judicial notice of the exhibits to this response that Defendant makes in pp. 3-4 of its memorandum.

**ARGUMENT**

**A.     The debt was in default (at least by Defendant's predecessor's accounting) when it was obtained. The debt-in-default exception to the FDCPA does not apply.**

Section I(A) of Defendant's memorandum in support of the motion to dismiss asserts the "debt which was not in default at the time it was obtained" exception to the definition of "debt collector" in the FDCPA under 15 U.S.C. § 1692a(6)(F)(iii). Defendant further asserts that because it currently is a property management company, that it categorically cannot be a debt collector, because property managers assume their responsibilities when at the commencement of a lease when the lease obligations are not in default. *See* Def's Memo. at pp. 5-6.

Defendant is mistaken about the default status of the debt. Defendant's predecessor became manager of the property on October 1, 2014. *See* Ex. "6," the SVN Management Agreement. More than half the damages claimed by Defendant in the First Small Claims Case were for back rent and late fees for the alleged non-payment of rent for March 2014, six months prior to Defendant's predecessor becoming the property manager. *See* Exhibit "2," the Complaint in 16SC1030, at p. 3 (alleging unpaid rent) and at Exhibit "F" thereto (showing unpaid rent from "03/2014" and posting late fees for the months "03/2014" through "01/2016"). Defendant certainly believed that the debt was in default when it obtained an interest in it.

Sure, the McHenry County, Illinois court ultimately found in the Second Small Claims Case that the March 2014 rent was actually paid in full and on time, but Defendant certainly believed that the March 2014 rent was due and owing when its relationship with the property owner commenced on October 1, 2014. Defendant and the property owner would not have filed

4

two separate small claims cases alleging non-payment of that month's rent if they did not consider Plaintiffs to be in default of their obligations to pay March 2014 rent.

**B.     Furthermore, Defendant never actually obtained the debts it was trying to collect.**

Continuing in response to Section I(A) of Defendant's memorandum, arguing the debt-not-in-default exception to the FDCPA, it does not matter whether the debt was in default when Defendant obtained an interest in it because Defendant never actually obtained an interest in the debts. Defendant's conduct in collecting rents and fees for the property owner clearly falls under the Illinois Collection Agency Act, 225 ILCS 425/1, *et seq*. (hereinafter, the "ICAA"). The ICAA generally prohibits the unlicensed collection of consumer debts owed to others. *See* 225 ILCS 425/4. There are myriad types of persons and companies exempt from the ICAA. *See* 225 ILCS 425/2.03. The only plausible exception to the ICAA that Defendant could invoke is the exception for "real estate brokers when acting in the pursuit of their profession." 225 ILCS 425/2.03(3). After all, Defendant purports to be a property manager, and the core functions of a property manager—leasing real estate, collecting rents—fall squarely into the definition of real estate brokerage under Illinois law. *See* 225 ILCS 454/1-10 (defining "broker").

Defendant's predecessor SVN Crossroads Management, LLC, which Plaintiffs allege violated the FDCPA, was never licensed in any capacity by the Illinois Department of Financial and Professional Regulation for any of the various real-estate-related licenses the IDFPR issues. *Compare* Exhibit "7-A", a query of the IDFPR's license lookup tool for the query "crossroads," *with* Exhibit "7-B," the IDFPR's list of the various licenses currently related to Crossroads Real Estate Partners, LLC, *with* Exhibit "7-C," a similar query for "SVN" showing no results.

5

Whatever contract or agreement Defendant asserts gave its predecessor the right to act as a property manager for and collect the debts of the property owner was illegal because Defendant's predecessor lacked the appropriate licenses to conduct either activity, either as a real estate broker or as a debt collector. Illegal contracts are void *ab initio* under Illinois law. *See State Bar Ass'n Mut. Ins. V. Coregis Ins.*, 821 N.E.2d 706, 712 (Ill Ct. App. 2004). Defendant's predecessor, therefore, never actually obtained an interest in the debt it sought to collect. It was operating as a rogue debt collector and/or unlicensed property manager.

The possibility that a debt collector never actually obtained the right to collect a debt is sufficient for Plaintiff's case to survive a Rule 12(b)(6) motion alleging the debt-not-in-default exception to the FDCPA. *See Llewellyn v. Shearson Financial Network, Inc.*, 622 F.Supp.2d 1062, 1073 (D. Colo. 2009).

**C.     Defendant's debt collection activities are not incidental to a *bona fide* fiduciary obligation. They in fact were prohibited by the document allegedly creating the fiduciary relationship.**

In Section I(B) of Defendant's memorandum, Defendant argues that the "incidental to a bona fide fiduciary obligation" exception to being a debt collector under the FDCPA bars Plaintiffs' FDCPA claims. *See* Dkt. 11, the Memorandum, at pp. 7-8. Defendant points to the SVN Management Agreement in support of this argument. *See id;* Ex. "6."

The odd thing about this argument is that Defendant's actions in the First Small Claims Case were actually prohibited by the SVN Management Agreement. Section 9 of the SVN Management Agreement governs the grant of authority by the property owner to Defendant to engage in collections activities on the owner's behalf. *See* Ex. "6" at Sec. 9. The Management Agreement is clear that "All such legal proceedings [to collect amounts due the owner] shall be

6

brought in Owner's name and Owner shall cooperate with Agent in all such proceedings, which shall be at Owner's sole expense." *See id.*

The First Small Claims Case was filed in Defendant's name, not in the name of the property owner. *See* Ex. "2." Doing something prohibited by a relationship is certainly not incidental to that relationship.

II. **Defendant's statute of limitations argument is frivolous. The FDCPA lawsuit was filed within one year of the underlying collections lawsuit being filed.**

The First Small Claims Case was filed on May 16, 2016. *See* Ex. "2," at file stamp in top right corner of p. 1. The FDCPA Lawsuit was filed on May 15, 2017. *See* Ex. "1," at file stamp in top right corner of p. 1. Even if the court follows *Judy v. Blatt, Hasenmiller, Liebsker & Moore LLC*, 2010 U.S. Dist. LEXIS 8027 (N.D. Ill. 2010), the FDCPA Lawsuit was timely filed because it was filed within one year of the First Small Claims Case being filed.

III. **There still is a private right of action under the ICAA.**

Section III of Defendant's memorandum closely follows the holding of *Skinner v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 2812 (N.D. Ill. Jan. 8, 2018), arguing that there is no private cause of action granted by the Illinois Collection Agency Act. While Plaintiffs fully understand how persuasive *Skinner* is to this Court and that the Court will probably concur with *Skinner*, thereby dismissing Plaintiffs' ICAA claims, it is worth commenting that *Skinner* and its predecessor, *Eul v. Transworld Sys.*, 2017 WL 1178537 (N.D. Ill Mar. 30, 2017), are departures from established law, and that *Sherman* is still good Illinois law.

*Skinner* begins by noting that *Sherman v. Field Clinic*, 392 N.E.2d 154 (Ill. Ct. App. 1979) (creating the private cause of action for ICAA violations) "stands alone," and that it was decided

almost forty years ago, and "no Illinois appellate decision since 1979 has found an implied private right of action under § 9 of the ICAA." *Skinner*, at *12. The age of precedent in Illinois has no bearing on whether it is precedential. When a district—any district—of the Court of Appeals of Illinois renders a decision, the "decision of the appellate court, though not binding on other appellate districts, is binding on the circuit courts throughout the State." *State Farm Fire and Cas. Co. v. Yapejian*, 605 N.E.2d 539, 542 (Ill. 1992). The only time a decision of the appellate court is not binding on the trial courts is when the districts of the appellate court disagree, s*ee id.*, or when overruled by a higher court. The fact that *Sherman* has not been rejected by any district of the appellate court or overruled by the Illinois Supreme Court of United States Supreme Court means that it is still good Illinois law. The fact that no other appellate court has joined in *Sherman's* holding is irrelevant for purposes of stare decisis.

*Skinner* then cites *obiter dictum* in *People ex. rel Daley v. Datacom System Corp.*, 585 N.E.2d 51 (Ill. 1991) for the proposition that "only the [IDFPR] had standing to pursue violations of the Collection Agency Act." *Skinner*, at *13-*14. The *Skinner* Court's reading of this one sentence is quite broad. *Datacom Systems Corp*. involved an ICAA lawsuit filed by the Cook County State's Attorney on behalf of the People of the State of Illinois. *See id*. at *1-2. In the context of that case, it would make sense that the Illinois Supreme Court was commenting on the fact that the Cook County State's Attorney had no business bringing the case because section 9 of the ICAA, 225 ILCS 425/9, provides that the IDFPR is the only governmental agency authorized by the ICAA to bring enforcement actions. The *Datacom System Corp*. Court was silent about private claims for for personal damages.

8

*Skinner* then discusses canons of construction. *Id.* at *15. Specifically, *Skinner* adopted the *expresio unius* canon. *See id*. Canons of construction are an almost useless aid to statutory construction because there is almost always a conflicting canon that would imply a different result. *See* Karl N. Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons of About How Statutes are to be Construed, 3 Vand. L. Rev. 395, 399 (1950) ("In the field of statutory construction. . . there are 'correct,' unchallengable rules of 'how to read' which lead in happily variant directions."). This is such a scenario. In *Marriage of O'Neill*, 563 N.E.2d 494, 502 (Ill. 1990), the Illinois Supreme Court noted, "The second rule can be called the legislative-inaction judicial-construction rule: When certain words in a statute are judicially construed and the legislature fails to amend (or reenact) that statute, it will be presumed that the legislature acquiesced in the meaning declared by the court." The *Skinner* Court noted legislative amendments to the ICAA following *Sherman*. *See Skinner* at *15. If the *Skinner* Court adopted the legislative-inaction judicial-construction rule of *Marriage of O'Neill*, it would have inferred that the legislature acquiesced to the existence of a private cause of action under the ICAA by not expressly revoking it.

*Skinner* then discusses *Metzger v. DaRosa*, 805 N.E.2d 1165 (Ill. 2004) for the proposition that when a statute grants a state official the authority to enforce a statute, it implies the legislature's intent not to imply a private right of action. *Skinner*, at *15. The *Skinner* Court's analysis on this issue should have started with *Noyola v. Board of Education of the City of Chicago*, 688 N.E.2d 81 (Ill. 1997). *See Cowper v. Nyberg*, 2015 IL 117811, ¶ 20 ("The four-part *Noyola* test is the analysis that this court uses when the plaintiff alleges a cause of action that originates in a statute, but the statute does not set forth an express right of action.").

9

The *Noyola* test is as follows: "[I]mplication of a private right of action is appropriate when (1) plaintiff is a member of the class for whose benefit the statute was enacted, (2) it is consistent with the underlying purpose of the statute, (3) plaintiff's injury is one the Act was designed to prevent, and (4) it is necessary to provide an adequate remedy for violations of the statute." *Noyola*, 688 N.E.2d at 85. Each of these four factors militate in favor of a private right of action for ICAA violations. Consumer debtors are very clearly the class of people for whose benefit the ICAA was enacted. *See* 225 ILCS 425/1a (declaration of public policy of the ICAA). Allowing aggrieved consumers to recover their damages from rogue debt collectors is consistent with the underlying purpose of the ICAA. *See id*. Injuries from improper debt collection activities are what the ICAA was designed to prevent. *See id*. Plaintiffs have no adequate remedy for violation of the statute. *See* 225 ILCS 425/9 (authorizing the IDFPR to issue fines but not authorizing it to award restitution or damages to victims).

## CONCLUSION

Plaintiffs' complaint survives Defendant's motion to dismiss. None of the exclusions to the definition of "debt collector" in the FDCPA apply to Defendant. This lawsuit was timely filed. Even though this Court has held in other cases that there is not a private right of action under the ICAA, those rulings improperly failed to follow *Sherman v. Field Clinic*, 392 N.E.2d 154 (Ill. Ct. App. 1979). Moreover, the existence of a private right of action under the ICAA is consistent with Illinois law about when a private right of action may be inferred by the Courts.

WHEREFORE, the Plaintiffs, AMBER SHAHID and MOHAMMED HASSAN, respectfully request that the Court deny Defendant's motion to dismiss and grant them such other and further relief as the Court deems just and proper.

    Respectfully submitted,

    AMBER SHAHID and MOHAMMED HASSAN

    By: */s/ John P. Dickson*
       Attorney

John P. Dickson (6303179)
DICKSON LAW GROUP, LLC
4 East Terra Cotta Avenue
Crystal Lake, Illinois 60014
(815) 317-5193 tel
(815) 317-5194 fax
john@dicksonlawgroup.com